UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

JOHN GROSSETETE,

    Plaintiff,

v.                                        Civ. No.15-cv-00592 MV/GJF

J. LUCERO, FNU GAUNA, FNU
RODGERS, and FNU DOES,

    Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant J. Lucero's January 19, 2016 Motion for Summary Judgment and Memorandum of Law in Support thereof [Doc. 15]. After various procedural hurdles, Plaintiff John Grossetete, representing himself *pro se*, drafted a handwritten opposition to Sergeant Lucero's motion on May 5, 2016 [Doc. 32], to which Sgt. Lucero responded [Doc. 33]. This Court referred Mr. Grossetete's case to be heard by United States Magistrate Judge Stephan M. Vidmar on October 1, 2015 [Doc. 5]. This case was reassigned to Magistrate Judge Gregory J. Fouratt on March 7, 2016 [Doc. 21]. The magistrate court issued a Report and Recommendations on Sgt. Lucero's motion for summary judgment on June 17, 2016 [Doc. 35]. Mr. Grossetete submitted handwritten objections to the magistrate court's findings on June 22, 2016 [Doc. 36].

Based on the Court's own *de novo* review of Sgt. Lucero's motion and Mr. Grossetete's claims as well as the magistrate court's Report and Recommendations and Mr. Grossetete's

1

objections, **IT IS ORDERED** that Sgt. Lucero's Motion for Summary Judgment [Doc. 15] is **GRANTED**.

## BACKGROUND

This case involves a correctional officer's consensual search of Mr. Grossetete's body for smuggled narcotics that allegedly exceeded the consent given by Mr. Grossetete during the course of the search.

### I.  Factual Background

"The [relevant] facts supported by evidence, [viewed] in the light most favorable to [Plaintiff]" as the party opposing the summary judgment, are as follows.  *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 662 (10th Cir. 2010).

On December 30, 2012, at the Guadalupe County Correctional Facility, Sgt. Lucero and Lieutenant Gauna were on duty in A-Pod and observed an unusual amount of traffic going in and out of Mr. Grossetete's cell.  Doc. 15-1, Declaration of J. Lucero, at 1.  Sgt. Lucero and Lt. Gauna suspected that contraband was driving the increased inmate traffic and proceeded to search the cell for contraband.  *Id.*  Not encountering any contraband in the cell, Sgt. Lucero and Lt. Gauna proceeded to strip search Mr. Grossetete.  *Id.*  Mr. Grossetete voluntarily submitted to this strip search.  Doc. 32, Opp. to MSJ, at 1.

Sgt. Lucero and Lt. Gauna then proceeded with Lieutenant Justin Rodgers to take the naked Mr. Grossetete to a nearby mop closet outside the view of security cameras to conduct a rectal cavity search, a mop closet which other inmates and correctional officers could see inside.  *Id.* at 1; *see* Doc. 33, Reply ISO MSJ, at 3.  On the way to the mop closet, Mr. Grossetete stated

to Sgt. Lucero that he had "keestered" Suboxone,[1] which was the contraband stored in his body cavity. *Compare* Doc. 15, MSJ, at 3 and Doc. 15-1, Decl. of J. Lucero, at 2, *with* Doc. 32, Opp. to MSJ and Doc. 36, Objs. to R&R.

Once Sgt. Lucero, Lt. Gauna, and Lt. Rodgers placed Mr. Grossetete in the mop closet, Lt. Rodgers stated that if Mr. Grossetete had smuggled in contraband with the help of his family during visitation, Lt. Rodgers may be required to arrest Mr. Grossetete's family and place Mr. Grossetete's child into the custody of the New Mexico Children Family and Youth Department (CYFD or "Protective Services"). Doc. 32, Opp. to MSJ, at 2; Doc. 33, Reply ISO MSJ, at 3 n.1; Doc. 15-13, Inmate Grievance Investigation, Report, and Recommendations, at 5 (documenting internal investigation findings regarding this fact).

Mr. Grossetete then proceeded to remove a blue balloon containing Suboxone from his body cavity and hand the Suboxone over to the correctional officers. Doc. 15-1, Decl. of J. Lucero, at 2; Doc. 15-10, Inmate Request Form, at 1. One of the officers present had a handheld video camera during this search, although it is unclear if any footage of this search currently exists. Doc. 32, Opp. to MSJ, at 1–2; Doc. 33, Reply ISO MSJ, at 3; *see* Doc. 15-13, Inmate Grievance Investigation Report and Recommendation, at 5 (documenting internal investigation findings regarding this fact).

As a result of Mr. Grossetete's smuggling of contraband into the corrections facility, Mr. Grossetete was placed in segregated confinement for 90 days and had 90 days of "good time" revoked. Doc. 15-8, Disciplinary Decision, at 1.

In addition to the above undisputed facts, the parties dispute the following:

---

[1] The Court takes judicial notice of the fact that Suboxone is a drug commonly used to treat addiction to opioids. INDIVIOR, WHAT IS SUBOXONE, http://www.suboxone.com/treatment/suboxone-film (last accessed August 26, 2016).

First, Sgt. Lucero claims to have initiated the cavity search because during the strip search he "noticed a string protruding from Grossetete's rectal area."  Doc. 15-1, Declaration of J. Lucero, at 1.  *Contra* Doc. 32, Opp. to MSJ, at 1; Doc. 36, Objs. to R&R at 1–2, 5.

Second, Mr. Grossetete contends that he did not consent to the cavity search at issue in this case or willingly give Sgt. Lucero the contraband at issue absent threats made by Lt. Rodgers.  *See* Doc. 36, Objs. to R&R, at 1.  *Contra* Doc. 15, MSJ, at 3.

Third, Mr. Grossetete asserts that the corrections officers physically touched him with gloved and ungloved hands in an attempt to remove the contraband from his cavity.  *See* Doc. 36, Objs. to R&R, at 3.  *Contra* Doc. 15, MSJ, at 3.

## II.   Procedural Background

On July 9, 2015, Mr. Grossetete filed a *pro se* complaint under 42 U.S.C. § 1983 and the Prison Rape Elimination Act claiming that he had been unconstitutionally searched and raped by several corrections officers at the Guadalupe County Correctional Facility.  Doc. 1, Compl., 1–3.  On November 19, 2015, this Court dismissed Mr. Grossetete's claims under the Prison Rape Elimination Act and his claims against the Warden of Guadalupe County Correctional Facility, but allowed Mr. Grossetete to proceed with his Section 1983 claims against the corrections officers involved in the search in this case.  Doc. 6, Sua Sponte Order re Dismissal, at 4.

On January 19, 2016, based on the above facts, Sgt. Lucero, acting on behalf of all remaining defendants, moved for summary judgment on all of Mr. Grossetete's alleged causes of action.  Doc. 15, MSJ.  After various procedural hurdles, Mr. Grossetete, representing himself *pro se*, submitted a handwritten opposition to Sgt. Lucero's motion on May 5, 2016, Doc. 32, Opp. to MSJ, to which Sgt. Lucero responded, Doc. 33, Reply ISO MSJ.  The magistrate court issued a Report and Recommendations granting Sgt. Lucero's Motion for Summary Judgment on

June 17, 2016.  Doc. 35, R&R.  Mr. Grossetete submitted handwritten objections to the magistrate court's findings on June 22, 2016.  Doc. 36, Objs. to R&R, *passim*.

## **STANDARD**

When a party files timely written objections to the magistrate judge's recommendation, the district court will conduct a *de novo* review and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  *De novo* review requires the district judge to consider relevant evidence on the record and not merely to review the magistrate judge's recommendation.  *In re Griego*, 64 F.3d 580, 583–84 (10th Cir. 1995).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993).  The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241

(10th Cir. 1991) (citation omitted). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 650 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted).

In considering a *pro se* claim, the Supreme Court has repeatedly held that a "document filed *pro se* is 'to be liberally construed[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (remarking that courts must generously construe handwritten *pro se* documents); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (accepting the "allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers."). The Tenth Circuit has clarified that although a trial court is not required to "construct arguments or theories for [a party] in the absence of any discussion of those issues," *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991), courts are required to give special leeway to *pro se* parties that do not necessarily understand the complex procedural requirements of federal courts. *Id.*; *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) ("At the outset, it is important to note Smith's pro se status in the district court."). In particular, courts are obligated to construe a *pro se* litigant's filings liberally when considering whether arguments are properly raised or facts are properly presented, including the *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

When considering a *pro se* opposition to a summary judgment motion, if a *pro se* plaintiff can demonstrate "specific factual support" for her allegations, her complaint should not be dismissed on summary judgment. *Pueblo Neighborhood Health Ctrs., Inc.*, 847 F.2d at 649–50 (remanding the case "for the limited purpose of determining whether there was any specific, nonconclusory evidence before the court at the time the summary judgment motion was made that is sufficient to support plaintiffs' claims").

In the case of summary judgment, the Advisory Committee to the Federal Rules of Civil Procedure have outlined specific protections for courts to observe to ensure that summary judgment is not improperly granted against a *pro se* party based that party's failure to properly address an undisputed fact. FED. R. CIV. P. 56(e)(4) advisory committee's note to the 2010 amendment. The Advisory Committee specifically notes that the Court should "take extra care with *pro se* litigants, advising them of the need to respond [to specific facts] and the risk of losing by summary judgment if an adequate response is not filed." *Id.* Furthermore, the Court should "seek to reassure itself [that summary judgment is appropriate] by some examination of the record before granting summary judgment against a *pro se* litigant." *Id.*

## DISCUSSION

The Court applies a two-step analysis to Section 1983 claims regarding unreasonable searches. "[T]he threshold inquiry focuses on whether an interest protected by the Fourth Amendment has been invaded" after which the Court asks: "Was the search or seizure reasonable." MICHAEL B. MUSHLIN, RIGHTS OF PRISONERS § 9:2 (4th ed. 2009) [hereinafter "RIGHTS OF PRISONERS"]; SHELDON NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 § 3:17 (4th ed. 2013) [hereinafter "NAHMOD"] (articulating the same standard). To prove that his Fourth Amendment rights were violated in a manner that would

give rise to liability under 42 U.S.C. § 1983, Mr. Grossetete must first show that he has a Fourth Amendment interest in a protected area that was invaded. *Smith v. Bd. of Cty. Comm'rs for Cty. of Otero, N.M.*, 316 F. App'x 786, 789 (10th Cir. 2009); *Covino v. Pastrissi*, 967 F.2d 73, 78 (2d Cir. 1992). If the Court determines that the encounter with Mr. Grossetete qualifies as a search, it must then evaluate whether or not the search was reasonably justified under the Fourth Amendment. *Specht v. Jensen*, 832 F.2d 1516, 1522–23 (10th Cir. 1987), *on reh'g in part*, 853 F.2d 805 (10th Cir. 1988). Even if the corrections officers involved had a reasonable justification to initiate the search, they must have conducted the search in a reasonable manner. *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007). Thus, the "reasonableness" prong of the two-step inquiry actually requires the Court to address two separate questions: (1) whether a search was reasonably justified and (2) whether a search was conducted reasonably. *See id.*

When applying the test elaborated above, the Court applies lesser scrutiny to searches conducted by correctional officers than it does to searches by ordinary police because "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 132 S.Ct. 1510, 1515 (2012). Thus, as a general matter "[i]n assessing the constitutional validity of prison practices, courts must balance against these institutional interests [prison discipline, security, and order] the extent to which convicts retain constitutional rights of privacy and freedom from unreasonable searches and seizures." RIGHTS OF PRISONERS at § 9:1; *see Covino*, 967 F.2d at 77 (noting this balancing of interests).

**I.     Mr. Grossetete Has a Constitutional Right to Be Free From Unreasonable Cavity Searches.**

As the first step in Mr. Grossetete's Section 1983 Fourth Amendment claim, the Court must determine whether Mr. Grossetete has a constitutionally protected interest in the area

8

searched. *Smith*, 316 F. App'x at 789.  A party can challenge a search under the Fourth Amendment if "the [party] manifested a subjective expectation of privacy in the area searched and [if] society is prepared to recognize that expectation as objectively reasonable." *United States v. Eckart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quotations omitted).  Here, it is clear that Mr. Grossetete has a Fourth Amendment interest in being free from unreasonable searches of his body cavity.  *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) ("We are persuaded to join other circuits in recognizing a prisoner's constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals'"); *Covino*, 967 F.2d at 78 ("we have little doubt that society is prepared to recognize as reasonable the retention of a limited right of bodily privacy even in the prison context").  Because Mr. Grossetete has a constitutionally protected privacy interest in his body cavity, the Fourth Amendment applies to the search in question.

## II.    Sgt. Lucero's Search of Mr. Grossetete Was Justified.

### A. Sgt. Lucero Had a Reasonable, Particularized Suspicion Sufficient to Initiate the Search.

When assessing the correction officers' justification for initiating a cavity search of Mr. Grossetete, the Court recognizes that while in general the state officer must have probable cause to conduct a particular search or seizure, *see, e.g., Mosley*, 743 F.3d at 1329 ("[A]n arrest . . . requires probable cause"), *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (explaining the probable cause standard), probable cause is not required in this case.  In *Bell v. Wolfish*, a divided Supreme Court held that a standard lower than probable cause applies when searching the body cavities of prison inmates for suspected contraband.  441 U.S. 520, 558–60 (1972) (splitting 5–4 on the issue, with three separate dissents).  However, even when the probable cause standard does not apply to a particular search or seizure, a constitutionally valid search

9

requires "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Hauk*, 412 F.3d 1179, 1186 (10th Cir. 2005) (quotations omitted) (discussing the reasonable suspicion standard as pertaining to a protective sweep); *see Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (explaining in the context of the warrantless search of a home that "reasonableness" is always required for a search).  Although the Tenth Circuit has not directly addressed the issue, courts have held that "searches of an inmate's body cavities entail a far greater invasion of privacy [than strip searches or cell searches] and must be reasonably justified on a particularized basis in order to be upheld."  RIGHTS OF PRISONERS at § 9:27; *see Hayes v. Marriott*, 70 F.3d 1144, 1146–47 (10th Cir. 1995) (noting that prisoners retain some right to privacy regarding body searches without reaching the issue of which Fourth Amendment standard applies when assessing the justification for these searches).  For example, the District of Kansas has held that the "reasonable suspicion" standard applies when conducting invasive searches of inmates. *Cameron v. Hendricks*, 942 F. Supp. 499, 502–03 (D. Kan. 1996) (finding that a cavity search was justified based on "reasonable suspicion" resulting from an x-ray). Following the guidance of the District of Kansas in *Cameron*, the Court applies the "reasonable suspicion justified on a particularized basis" standard to the search at issue here.  *See* RIGHTS OF PRISONERS at § 9:27.

Applying this standard to the facts in this case, Sgt. Lucero argues that the search was clearly justified by the observed traffic into and out of Mr. Grossetete's cell along with the observation upon conducting a strip search that a string was hanging out of Mr. Grossetete's body cavity. Doc. 15, MSJ, at 8–9 (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 n.7 (2d Cir. 2013)).  In his objections to the Report and Recommendations, Mr. Grossetete vehemently opposes the justification for the search, disputing that there was a string sticking out

of his body cavity indicating that contraband was concealed therein. Doc. 36, Objs. to R&R, *passim*. However, Mr. Grossetete does not dispute that before the cavity search took place he told Sgt. Lucero that he had "keestered" Suboxone. *Compare* Doc. 15, MSJ, at 3 and Doc. 15-1, Decl. of J. Lucero, at 2, *with* Doc. 32, Opp. to MSJ and Doc. 36, Objs. to R&R. Furthermore, Mr. Grossetete does not dispute that Sgt. Lucero and Lt. Gauna observed inmates entering and leaving Mr. Grossetete's cell in a manner that indicated trafficking in contraband, but that a search of the cell and a strip search of Mr. Grossetete produced no such contraband. *Id.*

Although Mr. Grossetete has raised objections to some of the facts that Sgt. Lucero assert justified the search in this case, sufficient undisputed facts, namely that Mr. Grossetete told Sgt. Lucero that he had contraband "keestered," indicate that Sgt. Lucero had reasonable suspicion justified on a particularized basis to initiate a search of Mr. Grossetete's body cavity. *Cf. Cameron*, 942 F. Supp. at 502–03. In *Cameron*, the District of Kansas held that a cavity search was justified based on reasonable suspicion resulting from an x-ray indicating contraband was concealed inside the cavity of an inmate. *Id.* The confession by Mr. Grossetete that he had contraband "keestered" offers similarly strong factual support for Sgt. Lucero's conclusion that the search at issue was justified. As a result, the corrections officers here were justified in initiating a search of Mr. Grossetete.

> B. <u>Mr. Grossetete Has Not Presented Evidence Sufficient to Create a Triable Issue of Fact That the Search at Issue Was Unreasonable.</u>

The gravamen of Mr. Grossetete's Section 1983 complaint is that the manner in which the corrections officers searched his cavity was unreasonable. *See generally* Doc. 32, Opp. to MSJ. Mr. Grossetete has argued that multiple less-intrusive means of conducting the cavity search were readily available to the corrections officers, including methods that would have been in line with alleged New Mexico DOC policy. Doc. 32, Opp. to MSJ, at 2–3. However, Sgt.

11

Lucero counters that the search here was reasonable regardless of the availability of less-intrusive means because the search was willingly conducted by Mr. Grossetete himself. Doc. 15, MSJ, at 7–8. Because Sgt. Lucero has presented substantial evidence that the search was consensual, and because Mr. Grossetete has failed to present competent evidence disputing this showing, the Court finds that the search was not conducted unreasonably and does not reach the issue of Mr. Grossetete's "less-intrusive means" theory.

In affirming a state actor's right to conduct a consensual search under the Fourth Amendment, the Supreme Court has stated that consensual searches are a "wholly legitimate aspect of effective police activity," for when there is no probable cause they "may be the only means of obtaining important and reliable evidence," and, even when there is probable cause, consensual searches "may result in considerably less inconvenience for the subject of the search." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973); *see United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012) (citing *Schneckloth*). However, the "Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Schneckloth*, 412 U.S. at 228; *see United States v. Kimoana*, 383 F.3d 1215, 1225 (10th Cir. 2004) (consent to a search cannot be coerced "by explicit or implicit means"). The Supreme Court further held that "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *see United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012) (same).

The Tenth Circuit has held that consent is not given under the Fourth Amendment when state actors threaten to punish the subject of the search if the subject refuses consent. *Eidson v. Owens*, 515 F.3d 1139, 1146–48 (10th Cir. 2008); *United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011). In *Owens*, the Tenth Circuit further explained that "[r]elevant circumstances [in determining the voluntariness of the consent] 'include physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons.'" 515 F.3d, at 1146 (citation omitted); *see also United States v. Silva-Arzeta*, 602 F.3d 1208, 1214 (10th Cir. 2010) (same). While each of these factors is relevant, "the presence or absence of a single factor is not controlling." *Harrison*, 639 F.3d at 1280.

In this case Mr. Grossetete has failed to demonstrate that a triable issue of fact exists regarding whether he was coerced into consenting to the search at issue. Although Mr. Grossetete was already restrained and in the presence of multiple law enforcement officers in a confined broom closet, these factors alone do not rise to the level of coercion in the Tenth Circuit. *See Silva-Arzeta*, 602 F.3d at 1214. As the Tenth Circuit held in *Silva-Arzeta*, a suspect that had been arrested and detained before consenting to the search of his apartment could not rely on "the coercive atmosphere [during the detention]" to vitiate his consent. *Id.* at 1214–15 (further finding that the suspect also could not rely on his limited English skills to invalidate his consent). Thus, Mr. Grossetete cannot rely on the "coercive atmosphere" at the point consent was given in order to indicate that the search was coerced.

In addition to the "coercive atmosphere" of the search, Mr. Grossetete also argues that he was coerced because Lt. Rodgers threatened to have Mr. Grossetete's child placed with Child

13

Services if Mr. Grossetete did not voluntarily search himself. Doc. 32, Opp. to MSJ, at 2. Furthermore, Mr. Grossetete stated in his objections to the magistrate court's Report and Recommendations that Lt. Rodgers "threatened arresting [him]," "threatened [him] with more time," threatened to "take[ him] to the hospital," and threatened that "they would have CYFD take away [his] little boy." Doc. 36, Obj. to R&R, at 3. However, the record does not support Mr. Grossetete's contention that this is what Lt. Rodgers actually said. After a diligent review of the record, the only potential factual support the Court could find was the internal investigation report by the corrections institution, which found that Lt. Rodgers did not threaten Mr. Grossetete and merely explained that "if it was discovered that contraband had been introduced with [Mr. Grossetete's son] present, one possibility could be that he was [sic] placed into CYFD custody." Doc. 15-13, Inmate Grievance Investigation, Report, and Recommendations, at 5. The other statements Mr. Grossetete alleges, which are otherwise completely unsubstantiated by the record, do not rise to the level of "specific, nonconclusory evidence" the Tenth Circuit requires for a plaintiff to survive summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc.*, 847 F.2d at 649–50 (requiring the district court to determine whether "specific, nonconclusory evidence" supported the plaintiff's claim). In particular, Mr. Grossetete provides no information regarding what it was that Lt. Rodgers specifically said or any context surrounding these statements that would suggest coercion. *See* Doc. 36, Obj. to R&R, at 3.

In the absence of competent evidence substantiating these alleged threats, Mr. Grossetete fails to show that Lt. Rogers' statements were coercive and not merely explaining the potential consequences for smuggling contraband. While Lt. Rodgers' statements may have felt coercive to Mr. Grossetete, simply explaining to Mr. Grossetete the consequences if he were found with contraband does not constitute coercion under the Fourth Amendment. In *Silva-Arezeta*, the

Tenth Circuit concluded that statements by an officer did not coerce consent when the statements did not constitute "trickery," there was no evidence that the officer used "an aggressive or insisting tone," and there was no evidence that the officer had unholstered his service weapon before requesting to conduct the search. *Silva-Arzeta*, 603 F.3d at 1214–15. Here, Mr. Grossetete has produced no evidence that any of the corrections officers were aggressive or insistent when requesting that Mr. Grossetete produce the contraband. *See id.* Accordingly, the Court finds that the search was not conducted unreasonably because it was voluntary and not coerced.

This Court's conclusion is further compelled by the contradictory, inconsistent, and self-serving positions Mr. Grossetete has taken regarding his consent to the search at issue. As noted by the magistrate court, Mr. Grossetete stated in internal grievance proceedings at the corrections facility that he was not coerced and that he "willingly" produced the contraband at issue. Doc. 35, R&R, at 7 ("Plaintiff documented, by his own hand, that he 'gave' the contraband-filled balloon to the Defendant 'willingly.'") (citing Doc. 15-10, Inmate Request Form, at 1). In the present litigation, Mr. Grossetete stated in his Complaint that there was no consent at all and that the contraband was removed when he was physically violated by gloved and ungloved hands during the search at issue. Doc. 1, Compl., at 2. Later, in opposing Sgt. Lucero's Motion for Summary Judgment, Mr. Grossetete stated that he volunteered to search himself because the corrections officers threatened to send his son to child protective services. Doc. 32, Opp. to MSJ, at 2. Then, once the magistrate court issued its Report and Recommendations, Mr. Grossetete reversed his story again, claiming again that he was physically violated by Sgt. Lucero. Doc. 36, Obj. to R&R, at 4–5.

In short, Mr. Grossetete has taken contradictory and self-serving positions regarding how the search was conducted and the scope of his consent thereto, switching his position each time that it would help him overcome a procedural hurdle to maintain his claim.  A plaintiff cannot repeatedly change his story in order to engineer a triable issue of fact because "unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (quoting *Phillips v. Calhoun,* 956 F.2d 949, 951 n. 3 (10th Cir. 1992)); *see also Eisken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470, 1476 (10th Cir. 1995) ("Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment").  Instead, only specific, nonconclusory facts adequately supported by the record are sufficient to oppose a properly supported summary judgment motion.  *Pueblo Neighborhood Health Ctrs., Inc.*, 847 F.2d at 649–50.  Because Mr. Grossetete fails to present any evidence that he was coerced by Lt. Rodgers' statements into producing the contraband, and in light of the substantial evidence that the search was voluntary, Sgt. Lucero must prevail on his summary judgment motion.

## CONCLUSION

Mr. Grossetete, a *pro se* plaintiff, has repeatedly offered contradictory and self-serving testimony in an attempt to manufacture a triable issue of fact in this case.  This Court, following the Advisory Committee notes to the 2010 amendment to Rule 56(e) regarding *pro se* parties, has diligently investigated the record and found insufficient factual support for Mr. Grossetete's claim that the search at issue here was coerced.  In particular, Mr. Grossetete failed to provide any specific, nonconclusory evidence of coercion or any explanation for his inconsistent statements.  Consequently, the Court finds that Sgt. Lucero's Motion for Summary Judgment [Doc. 15] is **GRANTED**.

DATED this 26th day of September, 2016.

_____
MARTHA VAZQUEZ
United States District Judge

| | |
|---|---|
| JOHN GROSSETETE | APRIL D. WHITE |
| *PRO SE* | Yenson, Allen & Wosick, P.C. |
| | *Attorney for Defendants* |
JOHN GROSSETETE  
*PRO SE*

APRIL D. WHITE  
Yenson, Allen & Wosick, P.C.  
*Attorney for Defendants*